IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-4098

_____


United States of America

Plaintiff/Appellee,

versus

Jimmy Beaumont, Alvin Paul Brevell, Jr.,
a/k/a "Junior", Gerald Daniel Beaumont and
Johnie Fae Beaumont, a/k/a Johnie R. Meyers

Defendants/Appellants.

_____

Appeals from the United States District Court
for the Eastern District of Texas

_____

(September 3, 1992)

Before GARZA, REYNALDO G., DAVIS AND BARKSDALE, Circuit Judges.

PER CURIAM:

In this multiple defendant appeal, appellants variously challenge their convictions for conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846, possession of precursor chemicals with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(1) and use of a telephone to facilitate a conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 843. Finding no reversible error, the convictions and sentences of appellants are in all respects AFFIRMED.

THE FACTS

Appellants Jimmy Beaumont (Beaumont) and his wife Johnie Fae Beaumont (Johnie) regularly purchased chemical glassware and precursor chemicals[1] for use in manufacturing methamphetamine between 1987 and 1989. The purchases were made at a chemical distribution store in Houston, Texas.[2] The owner of the store reported the purchases and, in 1989, agents of the Drug Enforcement Administration (DEA) began an investigation. DEA agent Ed Collins (Collins) instructed the store owner to provide Beaumont with Collins' phone number on his next visit, requesting that the owner inform Beaumont that the number belonged to an individual who could provide large quantities of precursor chemicals.

On December 13, 1989, Beaumont phoned Collins and offered to purchase 440 pounds of phenylacetic acid and 50 gallons of methylene for $9,200.00. The next day, Beaumont phoned Collins to discuss the delivery of the precursor chemicals and the market conditions of the availability of other precursors. Finally, on December 15, 1989, Beaumont again phoned Collins and asked to meet him at a truck stop near Houston. Collins suggested the two should meet on the following Monday. The meeting, however, never transpired as Collins was reassigned to another investigation. In his stead was placed DEA Agent Rene Castaneda (Castaneda) and Sgt.

---

[1]    The particular precursor chemicals purchased included phenylacetic acid, methylene and sodium acetate. There is no contention by the appellants that these chemicals are not used in the processing of methamphetamine.

[2]    Jimmy and Johnie were occasionally accompanied on the purchases by appellant Gerald Beaumont, Jimmy's brother, and appellant Alvin Brevell.

Investigator Howard Jake Smith (Smith) of the Texas Department of Public Safety.

On March 13, 1990, Smith and Castaneda met with appellant Alvin Paul Brevell, Jr. (Brevell) at a restaurant in Orange, Texas. Castaneda posed as a seller of precursor chemicals while Smith adopted the identity of a manufacturer of methamphetamine. Smith and Castaneda offered to sell Brevell 110 pounds of phenylacetic acid in exchange for $4,500.00 and a percentage of the subsequently manufactured methamphetamine. Brevell responded that any deals would have to be approved by Beaumont. He was informed by Castaneda that word of Beaumont's approval of the deal should be transmitted to Smith. Upon completion of this meeting, the parties left the restaurant and, in the parking lot, Castaneda revealed some glassware used in the manufacture of methamphetamine to Brevell. Brevell commented, after smelling the residue contained in the glassware, that he enjoyed the chemical odor.

In April of 1990, appellant Gerald Daniel Beaumont (Gerald), Beaumont's brother, phoned Smith and offered to purchase 440 pounds of phenylacetic acid and 50 gallons of methylene for the price of $16,200.00. Gerald phoned Smith again on April 9, 1990, to arrange a meeting. That same afternoon, Smith, Gerald and Brevell discussed the offer in the parking lot of a grocery store in Orange. During this meeting, Gerald delivered to Smith a piece of paper bearing the name "Jimmy" and containing Beaumont's phone number.

On April 10, 1990, the day after the meeting at the grocery

3

store parking lot, Smith phoned Gerald and informed him that the seller of the chemicals, Castaneda, would contact him shortly to discuss the transaction. Later that same day, Castaneda phoned Gerald and agreed to Gerald's offer. Gerald was informed at this time that Castaneda's younger brother, in actuality DEA Agent Miguel Villafranca (Villafranca), would deliver the chemicals along with Smith. The transaction was later discussed by Smith and Gerald on April 30, 1990 and, on May 1, 1990, Gerald was informed by Smith that the deal had been delayed.

On May 2, 1990, Smith phoned Gerald and informed him the seller had not produced the chemicals. Smith offered to further discuss the purchase with Gerald and the two met that same afternoon at a nightclub owned by Gerald. Smith demanded proof of payment for the chemicals and after Gerald made several phone calls, Beaumont arrived on a motorcycle and displayed before Smith $8,000.00 in cash. Beaumont smelled of precursor chemicals upon presentation of the money. Further discussions between Smith and Gerald occurred on May 3, 1990, and on May 7, 1990, Smith phoned Gerald to inform him the chemicals would arrive the following day. On May 8, 1990, Smith informed Gerald of a minor delay and, later that same afternoon, phoned Gerald again informing him the seller had arrived with the chemicals. Gerald was told to return the call at approximately 5:00 P.M.. At approximately 5:15 P.M., Smith told Gerald to meet him at a mini-storage facility in Groves, Texas. Later that same day, Smith and Villafranca sold 110 pounds of phenylacetic acid and two five gallon drums of methylene to Gerald

4

and Brevell at the mini-storage facility.[3]

Subsequent to the purchase of the chemicals, Gerald and Brevell transported the goods to a storage facility in Orange. After the two left the area, a search warrant was executed for the warehouse and the chemicals were seized. On May 9, 1990, a search warrant was executed for Beaumont's residence at 705 Suduth Drive, Bridge City, Orange County, Texas. Beaumont was arrested during the execution of the warrant. In addition, agents seized $12,300.00 in cash, various precursor chemicals,[4] drug paraphernalia,[5] chemical glassware and laboratory equipment. That same afternoon, Gerald was arrested in Louisiana and his tote bag was found to contain glassware used in the manufacturing of methamphetamine.

## II. DISCUSSION

The appellants raise a variety of issues in this appeal. We address them individually. Any error claimed by any appellant which is not addressed has been held to be completely without merit and is overruled.

A. Rule 41 Compliance

All appellants challenge the validity of the search warrant

---

[3] During the sale, Villafranca explained that, due to car trouble, the rest of the phenylacetic acid could not be provided. Villafranca additionally discussed future purchases of chemicals with Gerald as well as purchases of cocaine. Gerald explained to Villafranca that Beaumont would have to approve all deals.

[4] The chemicals seized at Beaumont's home included acetic anhydride, methylene, mercuric chloride and sodium acetate.

[5] The paraphernalia included a scale, various weights and measures, cutting agents and various catalogs or shopping lists, some of which smelled of precursor chemicals.

5

executed at the home of Beaumont.  As an initial matter, we note that Gerald and Brevell have not alleged that they owned or occupied Beaumont's home such that they could establish an expectation of privacy necessary to confer standing under the Fourth Amendment.  See Rakas v. Illinois, 439 U.S. 128, 133-34 (1978) (defendant lacks standing under Fourth Amendment where defendant has no expectation of privacy in area searched).  Thus, we do not address their contentions vis-a-vis the constitutional validity of the warrant.

Beaumont and Johnie raise several issues regarding the validity of the warrant.  First, they contend the warrant did not comply with the requirements of Federal Rule of Criminal Procedure 41.  This contention is premised upon two assertions: 1) the state judge issuing the warrant, although a judge within the Eastern District of Texas, was not a judge in Orange County, Texas and thus lacked the authority, under the language of Rule 41, to issue the warrant and 2) the agent requesting the warrant was not a "federal agent" as that term is contemplated under Rule 41.

Rule 41, as it existed at the time of the issuance of the warrant in this case, provided, in relevant part:

> (a) **Authority to Issue Warrant.**  A search warrant authorized by this rule may be issued by a federal magistrate or <u>a judge of a state court of record within the district</u> where the property or person sought is located, upon request of <u>a federal law enforcement officer or an attorney for the government</u>.

## 1. Rule 41 Is Confusing

Beaumont and Johnie contend that the language of Rule 41

6

mandates that if a warrant is to be issued by a state court judge, the judge must be a judge in the <u>state district</u> where the property or person sought is located. It is undisputed that the issuing judge in this case was not from the same <u>state district</u> where appellants Beaumont and Johnie and their home were located. It is also undisputed, however, that the issuing state court judge was in the <u>federal district</u> where the property and persons were located, namely the Eastern District of Texas.

The government, not surprisingly, argues that the language of former Rule 41 refers to the <u>federal district</u> in which the property or person is located. We agree with the government's position. The current version of Rule 41 provides:

> (a) **Authority to Issue Warrant.** ...a search warrant authorized by this rule may be issued (1) by a federal magistrate, or <u>a state court of record within the federal district</u>, for a search of property or for a person...

There could not be a more plain statement of the state court's authority under the current version of Rule 41. Were the current rule applicable, this matter would be open and shut. We must, however, look beyond this current version to illustrate the conclusion we reach regarding former Rule 41.

The notes of the Advisory Committee on Rules regarding the adoption of the current version of Rule 41 suggest that it represents a clarification of the former rather than a change in the rule. The notes provide:

> The [1990] amendment [to Rule 41] is intended to make clear that judges of state courts of record within a federal district may issue search warrants for persons or property located within that district.

This passage in the Committee's notes reveals that the amendment is a _clarification_, not a substantive change in the law. The government's conclusion that the proper interpretation of the former wording of the rule authorized the state judge to issue a warrant if the property or person sought was located in the same _federal district_ that the state judge was in is the correct interpretation.

2. Rule 41 Is Not Confusing

The second Rule 41 challenge presented by Beaumont and Johnie presents a different issue entirely. Unlike their contention that the language of Rule 41 is uncertain as it relates to a state judge's authority to issue a warrant, they contend now that the language of Rule 41 as it relates to the authority of a person to _request_ a warrant is as plain as day. The government does not seriously challenge this literal reading of the rule and we find ourselves in agreement with Beaumont and Johnie: Rule 41 authorizes the issuance of a warrant only upon request of a _federal law enforcement officer or an attorney for the government_.[6] As the facts of this case amply demonstrate, however, appellants' argument that because Smith was not a federal law enforcement officer when he requested the warrant does not end our inquiry but rather is its

---

[6] Although changes to Rule 41 resulting from the adoption of the 1990 amendments affected the language regarding the class of persons authorized to request warrants, these changes serve only to make clear that the requirement that the requesting party be a federal law enforcement officer (or an attorney for the government) is still as firm as ever. The Committee notes make plain that "[t]he amendment is not intended to expand the class of persons authorized to request a warrant...."

8

starting point.

At the hearing on the motion to suppress the evidence seized at the home of Beaumont and Johnie, Smith testified that he had been sworn in as a federal deputy "[b]ack on May the 12th or 16th[,] [1990]." He was sworn in as an FBI officer and his office was to expire on May 31, 1990.[7] The difficulty presented by Smith's testimony is that the warrant was requested on May 8, 1990 and actually issued in the early morning hours of May 9, 1990. Thus it is clear that Smith was not a federal law enforcement officer at the time the warrant was requested.[8] Nevertheless, we find that the warrant was validly requested because it was requested by an attorney for the government in compliance with Rule 41.

In United States v. Massey, 687 F.2d 1348 (10th Cir. 1982), Massey argued that a warrant had been issued in violation of Rule 41 because the requesting officer was an agent of the Oklahoma Narcotics Bureau. 687 F.2d at 1356. Affirming the district court's

---

[7] Although the record does not affirmatively so indicate, it seems apparent to us that Smith was sworn in as a federal officer for the limited purpose of the investigation of the current case.

[8] As we have indicated, Smith was not a federal officer at the time the warrant was issued despite his beliefs to the contrary as may be reflected in the testimony presented at the supression hearing; it appears such testimony was the result of some confusion on the part of Smith as to the question asked of him. We additionally find no basis for what might be to some the logical outcome of this finding, namely that the fact that Smith was not a federal officer indicates that Smith acted in bad faith when he requested the warrant. As we discuss infra, the record is absolutely devoid of any basis from which a determination of bad faith could be made.

denial of Massey's motion to suppress, the Tenth Circuit observed:

> The evidence presented below establishes that although the warrants were issued upon the affidavit of an agent of the Oklahoma Narcotics Bureau, they were <u>requested</u> by an assistant United States Attorney who telephoned the state judge in advance and accompanied the state agent when the affidavit was presented to the judge. This method of obtaining a search warrant satisfies the requirement of Rule 41(a) that the warrant be issued "upon the request of ... an attorney for the government." <u>See</u> <u>United States v. Carra</u>, 604 F.2d 1271, 1273 (10th Cir.), <u>cert. denied</u>, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979).

<u>Massey</u>, 678 F.2d at 1356 (<u>emphasis added</u>). <u>See</u> <u>United States v. Ventresca</u>, 380 U.S. 102, 108 (1965) (search warrant should not be reviewed under hypertechnical standard) (<u>cited in</u> <u>Carra</u>, 604 F.2d at 1273).

At the time the agents concluded that a warrant should be sought, they contacted the United States Attorney's Office. Assistant United States Attorney Malcolm Bales (Bales) made the initial telephone calls to the state judge and accompanied the state agent, Smith,[9] to the home of the state judge. These facts are virtually identical to those found in <u>Massey</u> and, adopting its understanding of what is required to satisfy the strictures of Rule 41(a) as it relates to this issue, we reject Beaumont and Johnie's contentions that Rule 41 has been violated. Having addressed the challenges to the <u>form</u> of the warrant, we now consider the allegation that the warrant was substantively deficient.

---

[9] Accompanying Smith and Bales to the late-night rendezvous at the state judge's home were federal agents Villafranca and Hoffman, both of the DEA.

B. Fourth Amendment Compliance

1. Probable Cause

Beaumont argues the warrant did not recite sufficient probable cause. A warrant must be based on probable cause to pass constitutional muster. The Fourth Amendment plainly requires that a warrant issue only "upon probable cause, supported by oath or affirmation..." U.S.Const. Amendment IV. Our review of an allegation that probable cause is lacking is limited to an inquiry of whether the issuing magistrate had a substantial basis for finding the existence of probable cause. See United States v. Wake, 948 F.2d 1422 (5th Cir. 1991) (quoting Illinois v. Gates, 462 U.S. 213, 238-39, 1428 (1983)). As we recited in Wake, a substantial basis for probable cause will be found if,

> given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

948 F.2d at 1428 (quoting Gates at 238-39).

The affidavit presented to the state judge recited that Smith was experienced in conducting investigations of methamphetamine laboratories and those who operate them, that Beaumont had been involved in negotiations for the purchase of precursor chemicals with Collins, that Gerald had informed Smith that Beaumont manufactured methamphetamine, that Gerald and Brevell drove to Beaumont's residence following the purchase of precursor chemicals[10]

---

[10] It is true that Gerald and Brevell were seen placing the containers of precursor chemicals in a mini-warehouse before

11

and that agents had observed methamphetamine being sold from another residence owned by Beaumont. The affidavit facially provides a substantial basis for probable cause permitting the state judge to determine that "there [was] a fair probability that contraband or evidence of a crime [would] be found" at Beaumont's house. This point of error is without merit.

2. Alleged False Statements in the Affidavit

Beaumont suggests the affidavit itself is invalid because it contains an alleged intentional untruth. Specifically, he contends that because the transcripts of the phone calls with Collins and Collins' testimony reveal that the individual seeking to purchase the precursor chemicals identified himself only as "Jim", the statement in the affidavit that the caller identified himself as "Jimmy Beaumont" was false. Our review of the record, however, indicates that this mistake is of no consequence as ample evidence exists permitting the inference that "Jim" was in fact "Jimmy Beaumont". Even were this not the case, we would reject Beaumont's contention because absent the statement regarding the Collins/Beaumont negotiations, the affidavit is sufficient to support a finding of probable cause. See Wake, 948 F.2d at 1429 (quoting Franks v. Delaware, 438 U.S. 154, 171-72 (1978) (where affidavit sufficient following removal of false statement, finding

---

venturing to Beaumont's house. However, the record does not disparage the government's suggestion that chemicals may nevertheless have been taken to Beaumont's house. While we refuse to speculate that such was in fact the case, the record reveals that this theory was implicitly presented to the issuing state judge and supported by inferences drawn from the affidavit and statements made by Smith.

of probable cause affirmed).

3. Lack of Particularity

Beaumont finally argues that the warrant lacks the required specificity to meet the Fourth Amendment's requirement of particularity in describing the items to be seized. See U.S.Const. Amendment IV (warrant must "particularly describ[e] the place to be searched and the persons or things to be seized). The test that is applied requires a court to ask if the description in the warrant would permit an executing officer to reasonably know what items are to be seized. See Steele v. United States, 267 U.S. 498, 503-04 (1925) (warrant must allow searcher to reasonably ascertain and identify thing sought). The warrant contained only a generalized statement that "evidence of the commission of a criminal offense as well as contraband abd [sic] the fruits of crime" were to be seized. It was, however, accompanied by Smith's affidavit which contained a detailed description of the items sought. The United States argues that the mere accompaniment of the Smith affidavit is sufficient to permit this court to find the warrant in compliance with the requirements of the Fourth Amendment. We disagree.

General warrants have long been abhorred in the jurisprudence of both England and the United States. See generally United States v. Riley, 906 F.2d 841, 847-50 (2nd Cir. 1990) (Weinstein, District Judge, dissenting) (providing concise and cogent historical analysis of abhorrence of general warrants in England and United States). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United

13

States v. Unites States District Court, E.D. Mich., S. Div., 407 U.S. 297, 313 (1972). In order to have this court uphold the seizures here, the government invokes the general propositions that a warrant must be read as a whole and that the particularity requirement may be satisfied by reference to the affidavit. These propositions are no doubt true, yet examination of the cases cited by the government in their support indicate the propositions do not apply to the facts of this case. In United States v. Cook, 657 F.2d 730, 736 (5th Cir. Unit A Sept. 30, 1981), the search warrant particularly described some evidence but did not so describe other evidence. We upheld the partial validity of the warrant because the warrant had referred to the affidavit and was accompanied by it. Id.; See United States v. Womack, 509 F.2d 368, 382 (D.C. Cir. 1974) ("The warrant incorporates by express reference the underlying affidavit attached thereto which quite specifically details the records and documents to be obtained in the search.") (emphasis in parenthetical added). In United States v. Haydel, 649 F.2d 1152 (5th Cir. Unit A July 8, 1981), cert. denied, 455 U.S. 1022 (1982), a warrant was challenged on appeal due to an alleged generality in the description of the place to be searched. 649 F.2d at 1156.[11] Finding the warrant sufficient, we held:

> If an objective reading of the description
> contained on the face of the warrant did not
> fairly direct attention to the place actually

---

[11] We observe that the abhorrence of generality in a warrant is applicable to descriptions of places as well things to be searched. See Riley, 906 F.2d at 849 (Weinstein, District Judge, dissenting) (citing Marron v. United States, 275 U.S. 192, 195-96 (1927)).

14

> searched, we would be compelled to hold the search illegal without further discussion. <u>An insufficient warrant cannot be cured by the most detailed affidavit</u>. <u>If, as is the case here, the warrant is ambiguous, but fairly directs attention</u> to the place actually searched, and, if the affidavit supporting the warrant is attached to the warrant when issued, the affidavit may be considered <u>to clarify an ambiguity on the face of the warrant</u>. [<u>citation omitted</u>]. The affidavit must be attached to the warrant so that the executing officer and the person whose premises are to be searched both have the information contained in the affidavit <u>in addition to what is said on the face of the warrant</u>.

<u>Haydel</u>, 649 F.2d at 1157. Finally, the government misreads the facts of <u>Andresen v. Maryland</u>, 427 U.S. 463 (1976). In <u>Andresen</u>, the Supreme Court reasoned that the inclusion of a generalized descriptive phrase did not invalidate a seizure where such a phrase "appears in each warrant at the end of a sentence <u>containing a lengthy list of specified and particular items to be seized</u>...." 427 U.S. at 480 (<u>emphasis added</u>).

From the above discussion, it is clear the cases require that in order for a warrant to meet the particularity requirement of the Fourth Amendment, the warrant itself must, <u>at a minimum</u>, contain something more than the absolute generality appearing on the face of the warrant at issue here. Moreover, although there is arguably some conflict between <u>Cook</u> and <u>Haydel</u> on this point, we feel the better rule, in agreement with the District of Colombia Circuit, <u>see</u> <u>Womack</u>, <u>supra</u>, as well as other circuits,[12] is to require that

_____

[12] <u>See</u> <u>United States v. Johnson</u>, 690 F.2d 60, 64-65 (3rd Cir. 1982), <u>cert. denied</u>, 459 U.S. 1214 (1983); <u>In re Property Belonging to Talk of the Town Bookstore, Inc.</u>, 644 F.2d 1317,

15

the warrant contain, at the very least, a cursory reference to the affidavit upon which an executing officer may have to rely. This requirement is far from burdensome, and in light of the importance of the protections safeguarded by the Fourth Amendment, we hold that where a warrant contains only the barest of generalized statements the particularity requirement is satisfied by reliance on an affidavit when the affidavit is incorporated by reference into the warrant. We do not hold, however, that absent such an incorporation the warrant must necessarily fail. Were we to so rule, we would be creating a technical, bright-line rule of Fourth Amendment jurisprudence. This we decline to do.

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court held that where a warrant lacked sufficient probable cause to satisfy the requirements of the Fourth Amendment, good faith reliance upon the warrant by the executing officer precludes the necessity of suppressing the evidence seized pursuant to the exclusionary rule. 468 U.S. at 922. The Court noted that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." Id. (citation omitted). On the same day that Leon was decided, the Court issued its opinion in Massachusetts v. Sheppard, 468 U.S. 981 (1984). In Sheppard, the respondent argued that a general warrant authorizing a search for

1318-19 (9th Cir. 1981); United States v. Johnson, 541 F.2d 1311, 1315-16 (8th Cir. 1976).

"controlled substances"[13] violated the particularity requirement of the Fourth Amendment. 468 U.S. at 987. The warrant was accompanied by a detailed affidavit indicating that items relating to a homicide were to be searched for.[14] Id. at 985. The issuing magistrate and the executing officers knew the contents of the affidavit and thus knew what was to be searched for. United States v. Leon, 468 U.S. 897, 964-65 (Stevens, J. concurring as to Sheppard and dissenting as to Leon). Relying on its decision in Leon, the Court reasoned that the only issue before it was "whether the officers reasonably believed that the search they conducted was authorized by a valid warrant." Sheppard, 468 U.S. at 988. Because none of the parties disputed the belief of the officers that the warrant was valid, the Court stated "the only question [remaining] is whether there was an objectively reasonable basis for the officers' mistaken belief." Id. Finding the belief that the warrant was valid to be an objectively reasonable belief, the Court noted that the affidavit had been approved by the U.S. Attorney,

_____

[13]    The warrant in Sheppard

> directed the officers to "search for any controlled substance, article, implement or other paraphernalia used in, for, or in connection with the unlawful possession or use of any controlled substance, and to seize and securely keep the same until final action...."

Sheppard, 468 U.S. at 986 n.2. This language is essentially as general as that contained in the warrant before us today.

[14]    The affidavit did include a statement that two bags of marijuana were to be searched for, but this appears to have been incidental to the search for evidence of the actual homicide. Sheppard, 468 U.S. at 985 n.1.

17

the issuing magistrate had made a probable cause determination and that the magistrate had assured the officers the warrant would be made valid on its face by the insertion of minor corrections. Id. at 989  Significantly, the Court observed:

> Indeed, Sheppard admits that if the judge had crossed out the reference to controlled substances, written "see attached affidavit" on the form, and attached the affidavit to the warrant, the warrant would have been valid. [citations omitted].

Sheppard, 468 U.S. at 990 n.7.

In the instant case, there was a probable cause determination made by the state judge, the affidavit provided specific information of the objects of the search, the executing officer was the affiant,[15] the additional officers making the search knew what was to be searched for, and, finally, the warrant could easily have been made valid by the insertion of the phrase "see attached

---

[15] This factor was also significant to the majority in Sheppard.  The Court noted:

> Normally, when an officer who has not been involved in the application stage receives a warrant, he will read it in order to determine the outcome of the search.  In this case, Detective O'Malley, the officer who directed the search, knew what items were listed in the affidavit presented to the judge, and he had good reason to believe the warrant authorized the seizure of those items.  Whether an officer who is less familiar with the warrant application or who has unalleviated concerns about the proper scope of the search would be justified in failing to notice a defect like the one in the warrant in this case is an issue we need not decide.

Sheppard, 468 U.S. at 989 n.6.

18

affidavit."  The Supreme Court's decision in <u>Sheppard</u>, applying the holding of <u>Leon</u> in the context of a general warrant, leads us to conclude that, under the facts of this case, the officers good faith reliance[16] upon the warrant was objectively reasonable.  The motion to suppress evidence seized pursuant to the warrant and attached affidavit was properly denied.  Thus endeth the Fourth Amendment issues.

C. <u>Modification of the Indictment</u>

Count Two of the superseding indictment originally charged Beaumont and Johnie with possession of phenylacetic acid and acetic anhydride.  Prior to trial, over appellants' objection, the district court granted the government's motion to strike the term "phenylacetic acid" from Count Two after the government explained that the forensic analysis of chemicals seized from Beaumont's house showed no such chemical.  Appellants claim that this elimination deprived them of their right to a grand jury.  The Supreme Court has rejected the argument that a defendant is deprived of the right to a grand jury if the proof at trial indicates that the defendant is guilty of a narrower, but included offense. <u>United States v. Miller</u>, 471 U.S. 130, 134-38 (1985).  The Court refused to accept the notion that a deprivation of rights had occurred simply because a grand jury might not have delivered a narrower indictment. <u>Id</u>.  We find no error here, where, had the

---

[16]  We note that here, as in <u>Sheppard</u>, there is no allegation that the executing officers did not act in good faith.

19

district court refused the government's motion and the jury found that the appellants were guilty only of the possession of the acetic anhydride, the appellants would have had no basis for appeal under Miller.  That is, the actions of the district court only alleviated the necessity of the appellants' making a motion to acquit as to the charge of possession of phenylacetic acid.  We find no error here.

D. Sufficiency of the Evidence

All appellants challenge the sufficiency of the evidence to sustain their convictions.  We address their arguments individually, viewing the evidence in the light most favorable to the verdict. United States v. McKnight, 953 F.2d 898, 901 n.3 (5th Cir. 1992).

1. Beaumont

Beaumont begins his brief with the assertion that the evidence was insufficient to convict him.  He fails, however, to make any argument whatsoever to support this contention.  Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned. United States v. Lindell, 881 F.2d 1313, 1325 (5th Cir. 1989), cert. denied, 496 U.S. 926 (1990) (citing Fed.R.App.P. 28(a)(4)).[17]

2. Johnie

---

[17]    Had Beaumont presented an argument regarding the sufficiency of the evidence against him, we would nevertheless reject it for our review of the record indicates ample evidence exists to support his convictions for conspiracy, possession, and illegal use of a telephone.

Johnie was convicted of the conspiracy offense and the substantive offense of possession. She suggests that the record reflects nothing more than that she provided the use of information contained on her driver's license for identification purposes when the precursor chemicals were purchased at the chemical supply store. We disagree.

In United States v. Sanchez, 961 F.2d 1169 (5th Cir. 1992) we observed:

> To establish guilt of a drug conspiracy, it must be proven that an agreement with intent to [manufacture methamphetamine] existed, that the defendant had knowledge of the agreement, and that the defendant voluntarily participated in the conspiracy. United States v. Lewis, 902 F.2d 1176, 1180 (5th Cir. 1990). An agreement may be inferred from a concert of action, participation from a "collocation of circumstances," and knowledge from surrounding circumstances. United States v. Espinoza-Seanez, 862 F.2d 526, 537 (5th Cir. 1988). Mere presence at the scene and close association with those involved are insufficient factors alone; nevertheless, they are relevant factors for the jury. United States v. Simmons, 918 F.2d 476, 484 (5th Cir. 1990).

Sanchez, 961 F.2d at 1174 (emphasis in original).

In Sanchez, we held that the defendant-spouse of a principal conspirator could be convicted upon evidence that she used a false name while making airline reservations for her husband and another coconspirator, discussed the conspiracy with her brother and lived with a principal of the conspiracy. Sanchez, 961 F.2d at 1178. In the case before us, the record indicates that Johnie repeatedly supplied false information on the sales invoices regarding the proper address and proper reasons for purchasing the chemicals.

21

These actions could permit a reasonable jury to infer that Johnie knew of the conspiracy and, particularly due to the fact that these actions were repeated, that she agreed to, and voluntarily participated in, the conspiracy. Moreover, Johnie lived in the same home as Beaumont, the principal conspirator, and accompanied him, together with Gerald and Brevell on occasion, to purchase the chemicals. With these facts in the record, we cannot say that there was insufficient evidence to support the jury's verdict as to the conspiracy count.

Johnie also challenges her conviction for the substantive offense of possession with intent to manufacture methamphetamine. It is well settled that "[a] conspirator is liable for the substantive offenses of his coconspirators while he is a member of the conspiracy." Sanchez, 961 F.2d at 1176 (citing United States v. Garcia, 917 F.2d 1370, 1377 (5th Cir. 1990)). Any analysis that turns on the lack of evidence directly implicating Johnie in the substantive offense of possession is unnecessary in light of the principal recited above. The jury was instructed that it could find Johnie guilty of the substantive offense based on the coconspirator liability theory; our inquiry need proceed no further.[18] Johnie's contentions are without merit.

_____

[18] Lest there be any question regarding the issue, we observe that the evidence was overwhelming that Beaumont was guilty of the substantive offense of possession. The house where the chemicals, glassware and paraphernalia were seized was used as a residence by Beaumont. There is virtually no question that he exercised dominion and control over the premises. See Sanchez, 961 F.2d at 11756 (discussing law of possession). Furthermore, we discern no serious dispute that the items seized were intended to be used for the manufacture of methamphetamine.

3. Gerald

Gerald suggests the evidence of his participation in the conspiracy failed to prove his guilt beyond a reasonable doubt. Like his brother Beaumont, Gerald fails to show how the evidence was insufficient, merely making the bland assertion that the evidence was insufficient.[19] See Lindell, supra. Even were he to have properly presented this issue, however, we nonetheless affirm his conviction. The evidence demonstrated that Gerald participated in purchases of precursor chemicals from the chemical supply store as well as from DEA and State agents. Moreover, Gerald negotiated these deals at length and the negotiations were tape recorded. These recordings were presented to the jury. Gerald's challenge to his conviction for conspiracy must fail.

4. Brevell

Brevell challenges his conviction for conspiracy. He recites in his brief both the inculpating and exculpating evidence introduced at trial. He concludes that, when contrasted, the exculpating evidence precludes a finding of guilt. We disagree. The evidence at trial showed that Brevell participated in the purchases of chemicals at the chemical store and accompanied Gerald in the purchases of chemicals from the DEA and State agents. Additionally, the evidence showed the Brevell participated in the

---

[19] It appears Gerald does not challenge the sufficiency of the evidence as to his conviction for illegal use of the telephone. We fail to see how he could, given the strength of the evidence against him on these counts. We note that it is refreshing to see an appellant and his counsel refraining from raising meritless issues on appeal.

transportation and unloading of the chemicals. Moreover, the evidence demonstrated that the warehouse where the chemicals were unloaded was in Brevell's name and paid for by Beaumont. Finally, the evidence showed that Brevell inspected glassware for the manufacture of methamphetamine and stated, upon sniffing the residue on the glassware, that he liked the smell of the chemicals. This evidence was more than sufficient to permit the jury to convict Brevell of conspiracy.

E. Miscellaneous Allegations of Error

The appellants contend a variety of legal error occurred in the admission of certain testimony and evidence. We disagree.

1. Coconspirators' Statements

At trial, Castaneda testified that Brevell had stated Beaumont was the head of the conspiracy and Smith testified that Gerald also admitted that Beaumont was the head of the conspiracy. The district court, over the objections of appellants, admitted the testimony upon condition that the government demonstrate the existence of a conspiracy. See Fed.R.Evid. 801(d)(2)(E) (coconspirators' statements not hearsay). The district court, at the close of the government's case-in-chief, determined that the government had satisfied its threshold burden of demonstrating by a preponderance of the evidence that a conspiracy existed. See Bourjaily v. United States, 483 U.S. 171, 175-181 (1987) (discussing admission of coconspirators' statements under Rule 801(d)(2)(E)); see also United State v. James, 590 F.2d 575, 582-83

(5th Cir.), <u>cert. denied</u>, 422 U.S. 917 (1979) (district court may conditionally admit coconspirators' statements).  We find no error in the admission of the statements.

2. <u>Expert Opinion</u>

The United States presented the testimony of its expert witness, Dr. Joseph Prall (Dr. Prall).  During direct examination, Dr. Prall expressed his opinion that the chemicals, glassware and various paraphernalia seized at Beaumont's home were being used in a large scale methamphetamine manufacturing operation.  Appellants failed to object to this testimony.  On cross-examination, appellants inquired as to whether a person who merely sold precursor chemicals and owned glassware was a manufacturer of methamphetamine.  Without objection, Dr. Prall responded that such a person was either directly manufacturing methamphetamine or engaged in a conspiracy to manufacture methamphetamine.  On redirect-examination, the government asked Dr. Prall what activity persons were engaged in when such persons sold precursor chemicals, kept formulas for methamphetamine, and sold precursor chemicals without keeping records of such sales.  Appellants objected to this line of questioning but the district court permitted Dr. Prall to answer when the government explained that it was only trying to follow up on Dr. Prall's opinion given during cross-examination. Dr. Prall testified that the individuals described in the government's question would be involved in a methamphetamine conspiracy.

Because the term "conspiracy" was first used by Dr. Prall

during cross-examination, and because appellants did not then object to its use, their complaint as to its subsequent use during redirect-examination will be upheld only if it constitutes plain error. See United States v. Nixon, 918 F.2d 895, 904-05 (11th Cir. 1990) (failure to object to use of term "conspiracy" by expert witness when elicited on cross examination rendered complaint about later use of term reviewable under plain error standard). Moreover, we note Federal Rule of Evidence 704 provides that expert "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704. After reviewing the transcripts of Dr. Prall's testimony, we feel that in the context given, the testimony was a factual rather than a legal conclusion. See Nixon, 918 F.2d at 905 (officer's use of "conspiracy" factual, not legal determination).[20]

F. The Sentences

Appellants challenge their sentences based upon alleged error in the testimony of Dr. Prall as to the amount of methamphetamine which could have been produced and the presentence report's reliance on that testimony. Appellants failed to object to the testimony when given and failed to object to the presentence report when presented. Appellants have preserved nothing for review.

---

[20] Appellants additionally contend that the failure of the government to adequately identify certain glassware introduced at the trial requires reversal. Our review of the record indicates that any failure in identification of the glassware went to the weight of the evidence and not its admissibility. See United States v. Casto, 889 F.2d 562, 569 (5th Cir. 1989), cert. denied, 110 S.Ct. 1165 (1990).

Furthermore, our review of the law and the record in this case suggests that even had the issue been preserved for appeal, we would nevertheless affirm appellants' sentences.

## CONCLUSION

We have exhaustively reviewed the record in this case and the relevant law.  Finding no error in the convictions and sentences of appellants, the district court is in all respects
AFFIRMED.