JERRY E. SMITH, Circuit Judge,
dissenting.
The majority’s creation — from whole cloth — of a substantial-compliance standard in Part VI is a dramatic judicial amendment of the Individuals with Disabilities Education Act (“IDEA”) without textual or precedential justification. It is both a usurpation of regulatory authority and an invitation for courts to engage in arbitrary decisionmaking. And, the majority provides scant direction on what substantial compliance really means. I respectfully dissent.
I.
Though my colleagues observe that this court has used a substantial-compliance standard in other applications of the IDEA, those cases involved a distinct statutory basis. All of the cases cited by the majority relate to whether a school’s alleged failure to develop or implement an individualized education plan (“IEP”) deprived students of a free and appropriate public education (“FAPE”).[1] That is an *981 inquiry considerably different from whether an independent educational evaluation (“IEE”) complies with state criteria.
Title 34 C.F.R. § 300.502(e)(1) has a plain textual mandate: The criteria under which an IEE is obtained at public expense “must be the same as the criteria that the public agency uses when it initiates an evaluation.” (Emphasis added.) And if the agency (the school) demonstrates that “the evaluation obtained by the parent did not meet agency criteria,” it need not pay for it. 34 C.F.R. § 300.502(b)(2)(h) (emphasis added). There is no qualifying language such as “substantially” or “mostly.”
In contrast, where courts have applied a “substantial compliance” standard to determine whether a school denied a student a FAPE in its development of or implementation of an IEP, the IDEA is less specific. “It is well-settléd that, without a claim that the FAPE was deficient, procedural defects are not actionable.” T.S., 265 F.3d at 1095; see also Adam J., 328 F.3d at 812 & n. 23 (adopting the approach in T.S.). Thus, to assert that a school failed to follow IDEA regulations regarding an IEP, the claimant must make an overall allegation that a FAPE itself was denied.
The IDEA does not prescribe substantive standards for what constitutes a FAPE. As explained in Board of Education v. Rowley, 458 U.S. 176, 205, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982),[2] the IDEA provides a number of “highly specific procedural safeguards” but “general and somewhat imprecise substantive admonitions.” “Noticeably absent from the language of the statute is any substantive, standard prescribing the level of education to be accorded handicapped children.” Id. at 189, 102 S.Ct. 3034. There must be a “lost educational opportunity” for there to be a FAPE violation. See Adam J., 328 F.3d at 812.
Procedural defects alone do not necessarily result in lost educational opportunities. Therefore, given the lack of guidance in the IDEA regarding the substance of a FAPE, and, thus, what an IEP is supposed to achieve, it is not surprising that in that context courts employ a “substantial-compliance” standard and excuse minimal procedural violations. See, e.g., id[3] The requirement that, to be reimbursed at public expense, an IEE must meet the same standards as for school-initiated evalua *982 tions does not bear, however, on the substantive question of what constitutes a FAPE.
Instead, there is good reason for schools to be required to pay only for those IEEs that fully comply with state evaluation criteria, as the majority comes close to acknowledging.[4] Regardless of who is paying, schools must consider an IEE in their educational determinations only “if it meets agency criteria.” 34 C.F.R. § 300.502(c)(1). Because school-conducted evaluations must meet federal criteria,[5] it is not surprising that IEEs that do not meet those same criteria are not particularly helpful to the schools. Requiring a school to pay for an evaluation that it need not consider drains scarce resources from other programs.
II.
The majority’s decision to apply a “substantial-compliance” standard is in tension with its earlier holding, in the last portion of Part V, that the IEE must comply with Bulletin 1508’s criteria. Implicit in the parents’ claim that they need only “substantially comply” with Bulletin 1508’s requirements is a contention that they can flout (or fail to comply with) some of Bulletin 1508’s criteria. Yet, if parents can ignore some of the criteria,.to what extent do they need to comply with Bulletin 1508 at all?
The majority provides meager guidance to the district courts on what “substantial compliance” looks like in the context of IEE reimbursement. Is meeting six out of ten criteria enough, or does it matter what kind of criteria are at issue? According to my colleagues, “[sjubstantial compli-anee ... means that insignificant or trivial deviations from the letter of agency criteria may be acceptable as long as there is substantive compliance with all material provisions of the agency criteria....”
That definition collapses on itself. Substantial compliance is “substantive compliance.” What is material and what is insignificant? The majority offers little indication. Instead, this so-called “standard” asks judges to act as policymakers to determine which agency criteria are and are not important.
Apparently, “substantial compliance” also requires the IEE to “provide[] detailed, rigorously produced and accessibly presented data.” Yet, data can be detailed, rigorously produced, and accessibly presented and still not be useful if it measures the wrong types of abilities. Thorough methodology does not compensate for categorical errors. That part of the definition is also unhelpful.
At this point, there is no way to know what constitutes substantial compliance; instead, that term sends a nod to district courts that “you will know it when you see it.” That is a standardless and, for the most part, useless pronouncement that lends itself to abuse. In contrast, a bright-line rule, requiring an IEE to comply with all agency criteria in order to be reimbursed, is much easier to administer and removes boundless discretion from the district courts.
III.
The school board articulated thirty-one ways in which Seth’s IEE failed to comply with state criteria, in addition to its failure *983 to adhere to the cost cap. Contrary to the majority’s characterization of the district court’s decision, the district court grouped those thirty-one allegations into four groups and analyzed each one to find noncompliance.[6] Notably, on appeal the parents do not combat these findings by demonstrating that the IEE actually adhered to Bulletin 1508;[7] instead, they advance the notion that the IEE need not comply with all of Bulletin 1508. Given the majority’s holding that the IEE was required to comply with it, and the parents’ failure to demonstrate such compliance, this should have been an easy case.
This conclusion is further strengthened if we look beyond the arguments and examine the record submitted to the district court.[8] Even assuming that some of the thirty-one areas of non-compliance were mere formatting deficiencies, as the parents imply,[9] there are also significant missing components from the IEE. Many of those missing elements relate to how Seth’s impairments should be addressed in a school setting.
For example, the IEE did not contain a description of Seth’s educational needs in prioritized order.[10] Similarly, the IEE did not contain an assessment, conducted at school, of Seth’s gross motor abilities to evaluate the extent to which they affected his ability to participate in educational ae-tivities. *984 [11] Perhaps most significantly, the IEE did not evaluate or review the extent to which existing interventions[12] were working.[13]
Although the IEE contained plenty of data regarding Seth’s overall abilities, and it did make recommendations for future improvement, there was little analysis of past performance and accommodations. The effectiveness of current and prior learning strategies, however, is an important data point in planning future interventions. Therefore, even if some of the areas of non-compliance were minor, there is no doubt that the IEE failed to comply with Bulletin 1508 in significant ways. Thus, even if we purport to apply a substantial-compliance standard, the IEE is fatally non-compliant.
IV.
The majority contends that absent a substantial-compliance standard,' schools will treat IEE reimbursement “as a privilege to be granted at their discretion” and thus effectively deny parents’ right to an IEE, undermining the purposes of the Act.[14] Yet, if the majority is concerned that school districts will employ arcane criteria and exacting formatting requirements to avoid paying for IEEs, there is already a mechanism built into the regulation to protect against such impositions. Section 300.502(e)(1) requires an IEE to follow the same criteria that the school uses to conduct its evaluations “to the extent those criteria are consistent with the parent’s right to an [IEE].” If the school’s criteria effectively prohibit parents from ever having an IEE conducted at public expense, parents are entitled to bring a due-process hearing to challenge these criteria. See 34 C.F.R. § 300.507(a)(1) (2015). If such criteria are inappropriately burdensome or irrelevant to parents, the proper approach is to strike down the criteria, holding that parents need not comply with them, rather than holding that the criteria do apply but parents need to comply with them only “substantially.”
In this court, the parents challenge some of the requirements in Bulletin 1508 as infringing their right to an IEE, including the imposition of content-based criteria, the necessity of a multidisciplinary team, and applying the criteria for initial evaluations as opposed to reevaluation criteria.[15] The majority concludes that the application of all of these criteria was appropriate. Because the majority determines that Bulletin 1508 is not “so onerous as to cumulatively and inherently violate *985 parents’ right to an IEE,”' application of the criteria in the bulletin cannot infringe on the parents’ right to an IEE. Thus, there is no need for the majority to spin a substantial-compliance standard to protect from the supposedly intrusive application of Bulletin 1508.
V.
The majority’s decision to impose a judge-made standard on IEE reimbursements is deeply flawed. The majority cites not one single word in the IDEA or its accompanying regulations that points to the existence of a substantial-compliance standard for IEE reimbursement.[16] Instead, the majority looks broadly to the purported purposes of the IDEA to discover a heretofore hidden substantial-compliance standard.[17] Such purposivism is but another name for license to refashion a statute or regulation to suit the judge’s personal whims.
That is not to say that purpose is irrelevant-, but it is operationalized via the text. See Scalia & Garner, supra, at 20 (explaining that textualism “routinely takes purpose into account, but in its concrete manifestations as deduced from a close reading of the text”). The danger arises when purpose is disembodied from the text. Indeed, “[t]he most destructive (and most alluring) feature of purposivism is its pure manipulability.” Id. at 112-15. “Any provision of law or of private ordering can be said to have a number of purposes, which can be placed on a ladder of abstraction.” Id. Law then becomes whatever the judges wish it to be.
The majority opinion not only serves as an example of such personal-preference decisionmaking but also provides little direction to district courts on how its new extra-textual standard operates. Instead, the majority invites the district judges to engage in the same sort of judicial arbitrariness, as they apply their own notions to decide what is and is not substantially compliant. Not only is such purposivism inappropriate, it is unnecessary. As I have explained, if the concern is that parents will be prohibited .from obtaining IEEs, the regulations already provide an avenue for them to challenge the imposition of overly burdensome criteria.
Judges must resist the siren call to become lawmakers. I respectfully dissent.

. Rowley is the case often cited by courts in discussing the substantial-compliance standard. See, e.g., Bobby R., 200 F.3d at 346, 349; Van Duyn, 502 F.3d at 821-22; Clark, 315 F.3d at 1027 & n. 3.

. Although determining whether a FAPE has been provided is a completely different inquiry from determining whether an IEE is eligible for public reimbursement, 20 U.S.C. § 1401(9)(D) does explain that a FAPE is "provided in conformity with the [IEP].” Thus, there is some textual basis for requiring schools, in order to provide a FAPE, to comply with all of the procedural requirements governing IEPs. Some of the critiques I make here of a substantial-compliance standard for IEE reimbursements could apply to a substantial-compliance standard in the context of FAPE violations. Yet, though the substantial-compliance standard for FAPE violations is the established rule in this circuit, see Adam J., 328 F.3d at 812, there is no Fifth Circuit precedent on the requirements for IEE reimbursement.

. "Allowing parents to ignore Bulletin 1508’s criteria can complicate subsequent efforts to compare the IEEs to the districts’ own evaluations, undermining a key function of the IEE.”

. See, e.g., 34 C.F.R. § 300.304(b)-(c) (outlining requirements for school-conducted evaluations).

. According to the majority, the district court “simply held ... that ‘Plaintiffs are not entitled to reimbursement because the IEE at issue does not comply with Bulletin 1508 criteria.’ ” Thus, the majority implies that the court accepted the school board's allegations without conducting further analysis. That is a mischaracterization of the opinion, whose entire sentence reads, "Plaintiffs are not entitled to reimbursement because the IEE at issue does not comply with Bulletin 1508 criteria with respect to the four areas of testing above." (Emphasis added.) Though the district court's analysis was somewhat limited, it did address each of these four areas of noncompliance.

. Indeed, the parents earlier admitted that the IEE did "not contain some elements or components required by Bulletin 1508 criteria.” Nevertheless, the parents briefly did reference a chart submitted to the district court in which they disputed the thirty-one counts of non-compliance. Yet they did not elaborate on those arguments in their submissions before us. Failure adequately to brief an issue on appeal is waiver. See Fed. R.App. P. 28(a)(8)(A); United States v. Beaumont, 972 F.2d 553, 563 (5th Cir.1992).

. Absent adequate argumentation in a brief, we are not required to comb through the record to look for points presented in the district court. Beaumont, 972 F.2d at 563. Nonetheless, I have conducted additional, albeit limited, analysis of the thirty-one areas of alleged non-compliance, and my findings are summarized above.

. The parents contend that any failure to follow Bulletin 1508 was inconsequential. Thus, although acknowledging that the IEE was missing some components, they contended that the IEE "substantially” complied with Bulletin 1508's criteria. It is true that some of the thirty-one areas of non-compliance appear less significant and probably would have been easy to correct. For example, the IEE did not provide Seth’s achievement scores using chronological age norms; instead, it used grade-based norms. Nevertheless, even though the school board offered to provide guidance to help the parents bring the IEE into full compliance, the parents failed to do so.

. In the district court, the parents noted that the school board had not included a prioritized list of educational needs in its previous evaluations. Even if the parents are correct, “two wrongs don’t make a right.” Bulletin 1508 states that a prioritized list is required. See Bulletin 1508, La. Admin. Code tit. 28, pt. Cl at § 513(B)(1)(g) (2009). Indeed, if the school did fail to include such a list in prior evaluations, there was even more reason for the IEE to include it, because IEEs frequently are designed to supplement school-board assessments.

. The physical-therapy evaluation did assess Seth’s overall gross motor skills, as the parents note, but there is no indication that the physical therapist evaluated Seth in an educational environment, as Bulletin 1508 requires. See La. Admin. Code tit. 28, pt. Cl § 1507(C)(l)(b)(i).

. Interventions are learning strategies that are tailored to individual students’ specific needs. See, e.g., Bulletin 1508, La. Admin. Code tit. 28, pt. Cl, § 301. Bulletin 1508 requires evaluations to contain an analysis of existing interventions. See id. § 513(B)(1)(c).

. The IEE states that documentation of evidence-based interventions was not provided as part of Seth’s educational records. Nevertheless, the IEE later refers to teachers who mentioned interventions and to accommodations that were based on a 2010 evaluation of Seth conducted by the school, so its failure to analyze at least these interventions more fully is inexplicable. The IEE also mentions IEP progress reports, so its earlier statement that there was no documentation from the school regarding Seth’s performance is contradictory.

. The majority’s reliance on purposivism is misguided. See infra Part V.

. Though the parents challenged the application of more specific criteria in the district court, they do not press those challenges before us, so they Eire waived.

. Indeed, the majority observes, "The degree of compliance necessary for an IEE to ‘meet agency criteria' under 34 C.F.R. § 300.502 is not explicitly defined in IDEA, its implementing regulations, or the case law, nor is there any directly relevant agency guidance.”

. The majority’s flawed approach is encapsulated in its footnote urging us to interpret ambiguous statutes according to their purpose. This misses the point that in regard to whether IEEs must meet all agency criteria, there is no ambiguity. In the absence of language to the contrary, the plain implication of the text is that IEEs need to comply fully with local regulatory requirements. The regulatory drafters did not say that IEEs "may be required” to comply with agency criteria; instead they stated that IEEs “must” comply. 34 C.F.R. § 300.502(e)(1); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 112-15 (2012) (explaining that "[mjandatory words,” such as "must” "impose a duty,” and "permissive words grant discretion”).
Thus, by the majority’s own reasoning there is no need to surmise regulatory purpose, because there is no ambiguity. Even if there were, the proper approach would be to use the various textual canons of statutory interpretation to resolve any textual uncertainties. See, e.g., POM Wonderful LLC v. Coca-Cola Co., - U.S. -, 134 S.Ct. 2228, 2236, 189 L.Ed.2d 141 (2014) (applying textual canons and explaining that "[a]nalysis of the statutory text, aided by established principles of interpretation, controls").