**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Diana Hernandez CASTO, Defendant–Appellant.**

**No. 88–5613.**

United States Court of Appeals, Fifth Circuit.

Nov. 20, 1989.

R. Laurence Macon, (Court-appointed),
San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Helen M. Eversberg, U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, THORNBERRY and GEE, Circuit Judges.

CLARK, Chief Judge:

## I.

Diana Casto appeals her conviction in the United States District Court for the Western District of Texas on one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and two counts of aiding and abetting in the unlawful distribution of methamphetamine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Casto also appeals her sentence as calculated under the United States Sentencing Commission's Sentencing Guidelines. We affirm.

## II.

During the early months of 1988, Melinda Gutierrez was involved in four episodes of drug-trafficking activity. On January 27, Gutierrez and another defendant, Melvin Dodd, sold methamphetamine ("crank"), a controlled substance, to San Antonio police officers Martinez and Castro. Defendant Casto was not a party to this meeting. On February 1, Officer Martinez arranged another meeting with Gutierrez in Gutierrez's home during which Martinez hoped to purchase methamphetamine. Gutierrez telephoned Casto before the meeting and asked Casto to accompany her to the drug deal. Gutierrez promised to give Casto a small amount of methamphetamine if she agreed. Casto consented. Before the meeting began, Gutierrez removed some of the methamphetamine from the bag of the drug which she intended to sell to Martinez. At the meeting, Officers Martinez and Castro questioned Gutierrez and Casto as to the quality of the methamphetamine. Both women assured the officers that the crank was "good stuff."

Martinez and Castro then purchased the drugs from Gutierrez. Before the officers left the meeting, Gutierrez gave Casto a portion of the crank that she had earlier removed from the bag sold to Martinez.

On February 10, Gutierrez again sold methamphetamine to Officer Martinez. Casto neither knew of nor was present at this sale.

On March 22, Gutierrez asked Casto to attend another drug sale to Martinez and Castro. This time Gutierrez promised Casto both cash and methamphetamine for her presence at the meeting. Casto agreed. Gutierrez supplied Casto with a loaded nine millimeter pistol and asked her to hold the gun during the meeting. Gutierrez and Casto then drove to the home of a third conspirator, Casias, and asked Casias to drive them to the meeting. He did, and the three met in a parking lot with Martinez and Castro. Gutierrez attempted to sell Martinez four bags of methamphetamine and three bags of marijuana. Officer Castro and a surveillance team then arrested Gutierrez, Casto, and Casias. Upon being ordered to raise her hands during the arrest, Casto, who was sitting in the back seat of Gutierrez's car, stuffed something into her purse before she complied. Immediately after the arrest, Officer Castro found the loaded and cocked pistol in Casto's purse.

Casto was tried and convicted on one count of conspiracy to possess methamphetamine with intent to distribute and on two counts of aiding and abetting the unlawful distribution of methamphetamine. She was sentenced to three concurrent sixty month jail terms and four subsequent years of supervised release. Casto now appeals both her conviction and her sentence.

## III.

### A. Sufficiency of the Evidence

Casto contends that the government failed to adduce evidence sufficient to support her conviction on either the conspiracy or aiding and abetting charges. "We review the evidence in the light most favor-

able to the government and affirm if substantial evidence supports the verdict, that is, if a reasonable jury could have found guilt beyond a reasonable doubt." *United States v. Manotas–Mejia,* 824 F.2d 360, 364 (5th Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 354, 98 L.Ed.2d 379 (1987), *citing Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). To obtain a conviction of conspiracy, the government must show beyond reasonable doubt "the existence of an agreement between two or more persons to violate the narcotics laws, and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Magee,* 821 F.2d 234, 238–39 (5th Cir.1987). Each element of this test is satisfied by the evidence presented to Casto's jury.

Gutierrez called Casto on two separate occasions to invite her participation in "deals." These invitations were not innocent in themselves, because they included Gutierrez's offer to give Casto methamphetamine and cash if she would attend the meetings. Even if Casto might not initially have realized that the "deals" in which she was to be involved were drug deals, this should have become apparent to her as she sat less than six feet away from Martinez, Castro, and Gutierrez on February 1, 1988 and watched the drugs and the cash swap hands. Nor was she merely a disinterested observer at this meeting, because when questioned she attested to the quality of the methamphetamine. Finally, she received and retained a quantity of the crank. On March 22, 1988 Casto again accompanied Gutierrez to a "deal." As she sat in the back seat of Gutierrez's car, with an undercover police officer in the front seat, Casto held a cocked and loaded nine millimeter pistol. The jury was given sufficient facts on which to base a reasonable belief that Casto knew the purpose of these meetings with Martinez and Castro was the sale of methamphetamine, that Casto entered freely into the conspiracy with the intent of gaining cash and drugs for herself, and that she participated in the conspiracy by adding her presence to the meetings, vouching for the quality of the drugs, and carrying a dangerous weapon to safeguard the criminal transaction.

In order to convict for aiding and abetting:

the government must prove that the defendant 'associated with a criminal venture, participated in the venture, and sought by his action to make the venture succeed'. [*United States v.*] *Holcomb,* 797 F.2d [1320] at 1328 [5th Cir.1986]. The defendant must share the principal's criminal intent and engage in some affirmative conduct designed to aid the venture.

*United States v. Manotas–Mejia,* 824 F.2d at 367 (citations omitted). The evidence that enabled the jury to reasonably find Casto guilty of conspiracy also enabled it to find her guilty of aiding and abetting in the drug distribution. Casto's criminal intent, association with, and participation in the venture is shown by her indication to the undercover officers of the quality of the methamphetamine, by her presence at a second "deal" of the same type, and by her control of the nine millimeter pistol during the final attempted sale. The evidence presented at Casto's trial was sufficient for the jury to reasonably convict on all counts.

## B. The Jury Instructions

■ Casto contends that the instruction on conspiracy given to the jury did not adequately delineate the elements of the crime, and that the trial judge incorrectly refused to give Casto's proposed instruction. The instruction given to the jury reads in part as follows:

What the evidence in the case must show beyond a reasonable doubt is:

One: That two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; and

Two: that the defendant willfully became a member of such conspiracy.

One may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged co-conspirators.

So, if a defendant, with an understanding of the unlawful character of a plan, knowingly and willfully joins in an unlawful scheme on one occasion that is sufficient to convict her for conspiracy even though she had not participated at earlier stages in the scheme and even though she played only a minor part in the conspiracy.

Of course, mere presence at the scene of an alleged transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interest, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy, does not thereby become a conspirator.

Record Vol. 3 at 263–64.

■ Because the framing of jury instructions is a matter within the broad discretion of the trial judge, we will not reverse a conviction on the grounds of insufficient or improper jury instructions unless the instructions taken as a whole do not "correctly reflect the issues and law." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir.1983). The instruction given here adequately and correctly covers each element of Casto's conspiracy charge.

■ Casto states that the trial judge erred in not presenting her proposed conspiracy instruction to the jury. Casto's proposed instruction, however, misstates the law of conspiracy by asserting that the conspirator, in order to be held guilty of conspiracy itself, must have committed an overt act in furtherance of the conspiracy. We have stated: "[i]t is unnecessary in drug conspiracy cases to prove an overt act in furtherance of the conspiracy." *United States v. Williams–Hendricks*, 805 F.2d 496, 502 (5th Cir.1986). Accordingly, the trial judge was correct in refusing Casto's proffered instruction.

## C. The Admission of Gutierrez's Guilty Plea

The following exchange occurred as part of the prosecution's direct examination of Gutierrez:

Q: Do you understand the members of the jury have to hear your answer? So it will be necessary for you to speak up. Have you been charged in this case with conspiracy to possess with intent to distribute methamphetamine?

A: Yes.

Q: Did you plead guilty to that offense?

Mr. Macon [Defense Counsel]: That is totally objectionable and she knows that ... [s]he knows better than to do that. That is unfair and wrong.

Record Vol. 3 at 134. At this point the trial judge interjected the following cautionary instruction to the jury:

Ladies and Gentleman of the Jury, I am going to allow that question in, but I caution you that whatever she says about her conduct is not necessarily—it is not to be considered as a guilty plea or any way be reference to the defendant in this case. If there is any statement as to a plea in this case, it is her credibility in issue, only to be taken as that. It is not to be inferred in any way, unless there is other testimony, with regards to the guilt or innocence, the issue of guilt or innocence as to this defendant Miss Casto, who is sitting over here. With that cautionary instruction, you may proceed.

The record indicates Gutierrez never answered the question. The prosecutor's next question was on a different topic, and the guilty plea question was not asked again. At the close of Gutierrez's testimony, the trial judge again cautioned the jury in regard to the question:

Once again, Ladies and Gentlemen, you will be cautioned about this one more time during the charge, but I will caution you again. You may consider Miss Gutierrez' testimony as to her guilty plea only to assess her credibility as a witness in this case. You may not, you may not use Miss Gutierrez', the witness here, guilty plea to create in

your mind any inference of guilt against Miss Casto.

Record Vol. 3 at 161. The trial judge also gave a similar instruction during his charge to the jury.

Casto now argues that the prosecution's introduction of Gutierrez's guilty plea to the jury constitutes reversible error because the government did not have a legitimate purpose in introducing the evidence. Casto asserts the prosecution used the evidence of Gutierrez's plea only to create an inference of Casto's guilt and that the guilty verdict should be overturned.

■■■ This circuit has often discussed the propriety of admitting a co-defendant's guilty plea into evidence before a criminal trial jury. Although a co-defendant's plea cannot be used to establish the guilt of the defendant, *United States v. Fleetwood*, 528 F.2d 528, 532 (5th Cir.1976), the plea can be used for other purposes such as impeaching the credibility of the co-defendant as a witness. *United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir.1983). Several factors must be considered in determining whether the introduction of a co-defendant's plea has improperly prejudiced the defendant:

> Factors to be considered in evaluating the impact of a witness' guilty plea are the presence or absence of a limiting instruction, whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as a substantive evidence of guilt, and whether the introduction of the plea was invited by defense counsel.

*United States v. Black*, 685 F.2d 132, 135 (5th Cir.), *cert. denied*, 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 518 (1982). In assessing all of these factors, we assume, *arguendo*, that evidence of Gutierrez's guilty plea was put before the jury by the prosecutor.

■■■ The government argues that Casto "opened the door" for discussion of the guilty plea by referring to Gutierrez's credibility during opening arguments. In his opening argument, defense counsel stated:

What is Melinda [Gutierrez] going to say? I don't know. I can't tell you. Diana [Casto] doesn't know. But if in fact this prosecutor puts Melinda on the stand, I assume that you will hark back to what Judge Garza told you earlier in the day. That is that you are the sole judge of the credibility. You are the people who make the decision about whether a person is believable or unbelievable. That you are the persons that make decisions about whether or not a person has interest in testifying and what that interest could be.

Record Vol. 2 at 58. Although defense counsel did not openly refer to Gutierrez's guilty plea or to any plea bargain which Gutierrez had entered, it is clear that defense counsel invited the jury to regard any adverse testimony by Gutierrez with suspicion. In this situation, it is the prosecution's privilege to defuse potential attacks on his witness's credibility during direct examination. This argument provided a legitimate reason to reveal Gutierrez's guilty plea. "Counsel presenting witnesses of blemished reputation routinely bring out 'such adverse facts as they know will be developed on cross-examination' in order to avoid even the appearance of an 'intent to conceal.'" *United States v. Borchardt*, 698 F.2d at 701 (quoting *United States v. Aronson*, 319 F.2d 48, 51 (2d Cir.1963), *cert. denied*, 375 U.S. 920, 84 S.Ct. 264, 11 L.Ed.2d 164 (1963)). Because it was reasonable for the prosecution here to believe that Casto's defense counsel would attempt to impeach Gutierrez's implicating testimony by questioning her about her guilty plea, it was also reasonable for the prosecutor to adduce this fact during her direct examination of Gutierrez.

■■■ More than the "door opening" argument insulates the prosecution's action from error here. The jury was also "given a 'clear and strong cautionary instruction,'" *United States v. Baete*, 414 F.2d 782, 784 (5th Cir.1969), that it might use the accomplice's guilty plea only to assess her credibility as a witness and not to create an inference of guilt against the accused." *United States v. Borchardt*, 698 F.2d at 701. Such an instruction cures any preju-

dice against the defendant created by the admission of the co-defendant's guilty plea unless the circumstances of the case render the instruction ineffective. *United States v. Baete*, 414 F.2d at 783–84. The circumstances of the case overcome the curative effect of the instruction when "the guilty plea of one codefendant necessarily implicates another or others." *Id.* That was not the case here.

Gutierrez's guilty plea did not implicate Casto. At trial Casto did not deny or attempt to disprove the facts surrounding Gutierrez's drug trafficking. Instead, she argued that her own participation in the drug trafficking was unintentional, unknowing, and *de minimis*. In this context, the introduction of Gutierrez's guilty plea to Casto's jury served only as factual information of Gutierrez's actions which the jury could then combine with evidence of Casto's knowledge and intent to determine whether Casto had conspired with or had aided and abetted Gutierrez. Gutierrez's guilt, especially in light of the cautionary instruction to the jury, did not confirm or deny Casto's guilt.

The circumstances of Casto's case are similar to those in *United States v. Richardson*, 504 F.2d 357 (5th Cir.1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1406, 43 L.Ed.2d 659 (1975), where Richardson appealed his conviction of unlawful possession of a dangerous weapon. Police officers found the illegal weapon after stopping a car in which Richardson, Anderson, and Fritz were riding. All three men were indicted for unlawfully carrying an unregistered shotgun. Anderson pled guilty and testified at Richardson's trial. Richardson's jury was notified of Anderson's guilty plea, and on appeal Richardson complained that this was reversible error. We affirmed Richardson's conviction in spite of the fact that the jury had been told of Anderson's guilty plea, stating:

> In the case at bar, however, we are not faced with such "aggravated circumstances" [as merited the reversal of conviction in *United States v. Baete* ]. Richardson did not deny the unlawful presence of the weapon in his car. Rather,

he admitted the weapon's introduction into the car by Anderson—that is, Anderson's guilt—but sought to disconnect Anderson's actions and responsibility for the weapon from himself.

*Richardson*, 504 F.2d at 360. Similarly, Casto did not deny her presence at Gutierrez's February 1 and March 22 drug deals. Nor did she deny that the drugs were actually discussed and sold in her presence. Rather, she attempted to "disconnect [Gutierrez's] actions and responsibility for the [drugs] from [her]self." *Id.* As in *Richardson*, the co-defendant's guilty plea here did not establish any facts which the defendant attempted to deny. Notifying the jury of the co-defendant's plea in this case, therefore, did not create reversible error.

### D. The Admission into Evidence of the Packaged Methamphetamine

Casto contends that a break in the chain of custody pertinent to Government Exhibits Two, Three, Four, and Five, the packages of methamphetamine sold to the undercover agents by Gutierrez, should have rendered these exhibits inadmissible. Shortly after Officer Martinez seized the packages, they were sealed and sent to a Drug Enforcement Agency laboratory in Dallas, Texas. Over two months later the packages were tested by Frank Medina, a forensic chemist at the lab. Medina found that the packages contained methamphetamine. He then sent the packages back to Martinez, who held custody of them until trial. During the period between the arrival of the packages at the laboratory and Medina's testing, the packages were kept in a vault where a technician had placed them upon their arrival at the laboratory.

Martinez and Medina testified at trial as to their custody of the packages, but the technician did not testify. According to Casto the trial judge erred by disregarding this evidentiary flaw and allowing the packages into evidence. We disagree.

A trial judge is correct in allowing physical evidence to be presented to the jury as long as a reasonable jury could decide that the evidence is what the offering party claims it to be. *United States v.*

*Jardina,* 747 F.2d 945, 951 (5th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985); FED.R.EVID. 901. Any question as to the authenticity of the evidence is then properly decided by the jury. Thus, a break in the chain of custody affects only the weight and not the admissibility of the evidence. *Id.* The trial court was correct to admit the packages of methamphetamine.

**E. The Renumbering of the Indictment**

Casto was originally charged in a five-count indictment. Count Two included a charge brought only against Dodd, one of Casto's co-defendants. Casto moved to have this Count stricken from her indictment, and the government agreed. This left Casto's indictment with four numbered counts, One, Three, Four, and Five. Originally, Count One charged conspiracy, Count Three charged aiding and abetting on February 1, and Count Five charged aiding and abetting on March 22. Original Count Four pertained only to Gutierrez. After Count Two was stricken, the indictment as read by the government at trial and as read by the trial judge in giving jury instructions consisted of Counts One through Four. The verdict returned by the jury found Casto guilty of Counts One, Two, and Four. The trial court sentenced Casto on Counts One, Three, and Five. Casto complains that the trial court sentenced her on the wrong Counts. This contention is without merit. The final order entered by the trial judge clearly states that Casto was sentenced on Count One, conspiracy to possess with intent to distribute a schedule II controlled substance (Methamphetamine) and on Counts Three and Five, aiding and abetting the distribution of a controlled substance (Methamphetamine). Although the court's sentence altered the numbers used in remarking the Counts during the trial, the content of the counts remained consistent, and there is no evidence in the record that the renumbering of the counts confused either the judge, jury, prosecution, or defense counsel.

**F. Casto's Sentence Under the Sentencing Guidelines**

Casto claims that the United States Sentencing Commission's Sentencing Guidelines are unconstitutional. She adopts the positions taken by the defendants in *Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) and *United States v. White,* 869 F.2d 822 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). These cases have recently affirmed the constitutionality of the Sentencing Guidelines. Casto's reliance on these cases is, therefore, foreclosed.

Casto also contends that the Sentencing Guidelines violate her due process rights by allowing the trial judge to decide by a preponderance of the evidence when she entered the drug-trafficking conspiracy. Casto's jury, in its general verdict, was not asked to decided the date on which Casto joined the conspiracy. At the sentencing hearing, the trial judge held that although there was insufficient evidence to show that Casto had joined the conspiracy to distribute methamphetamine as early as the January 27 sale, there was sufficient evidence to conclude that Casto joined the conspiracy prior to the February 1 sale. The trial judge computed Casto's sixty-month sentence using the amount of methamphetamine contained in the February 1, February 10, and March 22 transactions. Casto contests this determination.

In *Williams v. People of State of New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), a state court jury convicted the defendant of first-degree murder and recommended a sentence of life imprisonment. At the sentencing hearing the trial judge, relying heavily on a probation officer's report of the defendant's criminal history, sentenced the defendant to death. The defendant appealed, arguing that the judge's reliance on facts which were not proven beyond a reasonable doubt at trial violated his fourteenth amendment right to due process. The Supreme Court affirmed the sentence, noting:

Tribunals passing on the guilt of a defendant always have been hedged in by

strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law ... [a] recent manifestation of the historical latitude allowed sentencing judges appears in Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

*Williams*, 337 U.S. at 246, 69 S.Ct. at 1082 (footnote omitted). The trial judge, in imposing the enhanced sentence on Williams, acted under a New York statute which allowed trial judges to consider out-of-court information in formulating criminal sentences. The situation of the New York judge was similar to that of a federal trial judge today who considers the aggravating and mitigating factors listed in the Sentencing Guidelines in order to compute the defendant's offense level. Indeed, the modern federal trial judge has less discretion in contemplating sentencing than did a New York trial judge in 1949.

Based on the amount of methamphetamine and marijuana included in the transactions of February 1, February 10, and March 22, the trial judge here decided that Casto's base offense level was twenty-two. In making this computation, the trial judge had to decide at what point Casto joined the conspiracy. He held that she joined the conspiracy prior to the February 1 drug sale. Under the standard set out in *Williams*, that sentencing factor did not have to be proven beyond a reasonable doubt. *See McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2418, 91 L.Ed.2d 67 (1986) ("Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all."). Once the jury convicted Casto under the reasonable doubt standard, the trial judge was authorized to sentence Casto based on both the evidence proven beyond a reasonable doubt at trial and facts which he believed had been proven by a preponderance of that evidence. As Justice Black stated in *Williams:*

> In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused ... [a] sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined.

*Williams*, 337 U.S. at 246–47, 69 S.Ct. at 1082–83. Justice Black concluded:

> The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice.

*Williams*, 337 U.S. at 251, 69 S.Ct. at 1085. Here, we need not extend the authority of the trial judge in sentencing even to the extent allowed by *Williams*. The trial judge did not rely on out-of-court evidence in sentencing Casto, rather, he merely interpreted the evidence presented in court. Because his interpretation of the facts before him was reasonable and because the sentence imposed is fully within the applicable Sentencing Guidelines, we affirm.

### IV.

The judgment of the district court is

AFFIRMED.