UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-40508
_____


United States of America,

Plaintiff-Appellee,

versus

Ricky J. Shugart,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Texas
_____
July 14, 1997


Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The appellant, Ricky Joe Shugart, challenges his conviction
and sentence for manufacturing methcathinone in violation of 21
U.S.C. § 841(a)(1) and possessing ephedrine with the intent to
manufacture methcathinone in violation of 21 U.S.C. § 841(d)(1).
We conclude that the good-faith exception to the exclusionary rule
defeats Shugart's arguments that evidence of methcathinone
production secured pursuant to search warrants was erroneously
admitted into evidence.  We also hold that evidence found on
Shugart's person when he was arrested was properly admitted into

evidence as fruits of a lawful search incident to an arrest. Moreover, we conclude that the district court did not abuse its discretion by admitting other challenged evidence or by declining to grant Shugart's motion for a new trial based on newly discovered evidence. Finally, we conclude that the district court committed no error in calculating Shugart's sentence. Accordingly, the judgment of the district court is affirmed in all respects.

## I. Background

United States Drug Enforcement Agency ("DEA") agents began investigating the alleged narcotics activity of Shugart and his sister, Lori Ann Leach, when Agent Michael Keene received a tip that Shugart and Leach were involved in the illegal production of methcathinone. The tip was provided by a DEA agent in Wichita, Kansas, who told Agent Keene that a confidential informant ("CI") in Kansas told him that Shugart was in possession of a "N-Methcathinone laboratory." The CI also alleged that Shugart was ordering ephedrine, a substance needed to produce methcathinone, from Olympus Distributing Company ("Olympus") and T&M Distributing Company ("T&M"), and that Shugart occasionally directed Leach to order the ephedrine.[1] The CI also stated that he had been on Shugart's and Leach's properties near Bonham, Texas, in the month preceding the tip, and had observed a methcathinone laboratory on Shugart's property, and other chemicals used to produce methcathinone on Leach's property.

---

[1] It is undisputed that ephedrine has lawful uses as an appetite suppressant and that it is not illegal to order the drug from mail-order houses.

Before taking further action, Agent Keene sought to verify the information provided by the CI. In this regard, Agent Keene contacted T&M and asked whether Shugart or Leach had ordered ephedrine. A representative of T&M told Agent Keene that Shugart and Leach had recently placed several large orders for ephedrine that were shipped to Bonham, Texas.

On November 8, 1994, a T&M representative phoned Agent Keene and informed him that Shugart had recently placed an order for 3,000 tablets of ephedrine to be sent to a post office box in Randolph, Texas. Agent Keene confirmed this information by contacting a postal inspector who stated that a package from T&M addressed to Shugart had arrived at the Randolph post office. The postal inspector also told Agent Keene that another package addressed to Shugart had arrived from Olympus. Both packages were mailed collect on delivery, requiring Shugart to pay for the packages before receiving them.

DEA agents and United States Postal Inspectors established surveillance of the Randolph post office. At approximately 10:00 a.m. on November 14, 1994, Shugart and a woman, later identified as his wife, arrived at the post office. Shugart entered the post office and paid for the package from Olympus. Shugart told a postal inspector that he had only enough money to pay for one of the packages and that he would return later for the package from T&M. Shugart then returned to the car, and the agents followed him and his wife to Leach's mobile home, located in a rural area near Bonham, Texas. Once there, Shugart exited the car and carried the

3

package inside the mobile home. His wife, still followed by DEA agents, then drove to a grocery store in Bonham, Texas, where a DEA agent watched her purchase Red Devil Lye and Epsom Salt, which are also ingredients necessary to produce methcathinone. The agents continued to tail Shugart's wife on the return trip to Leach's mobile home.

While conducting this surveillance, Agent Keene called the CI in Kansas on a cellular phone. The CI stated that he had aided Shugart in manufacturing methcathinone on Shugart's property on two separate occasions in August 1994. The CI also told Agent Keene that he had observed methcathinone, ephedrine, and other chemicals used to produce methcathinone on Leach's property in August 1994.

Based on the DEA's surveillance and his conversation with the CI, Agent Keene decided to apply for warrants to search Shugart's and Leach's properties. At approximately 2:00 p.m. the same day, Agent Keene hastily drafted an affidavit incorporating the above facts and presented it to a magistrate judge in Sherman, Texas.

Before presenting the applications and affidavit for the search warrants to the magistrate, however, Agent Keene noticed that the applications and warrant forms contained several defects. Apparently, the agent who prepared the documents utilized boilerplate forms that had previously been used to acquire a warrant authorizing a search for evidence of possession with the intent to distribute cocaine. Both the applications for the search warrants and the warrants themselves referred to "cocaine" rather than "methcathinone."

4

Agent Keene brought the mistakes to the magistrate's attention, and the magistrate instructed him to mark through the references to "cocaine," insert "methcathinone," and initial the hand-written changes. Agent Keene complied with these instructions, and the magistrate signed the warrants containing Agent Keene's interlineations.

Agent Keene and the Assistant United States Attorney assigned to the case failed to detect the same mistake on a form entitled "Application and Affidavit for Search Warrant," which served as a cover sheet for Agent Keene's affidavit in support of the warrants. On that document, the items to be searched for and seized were described as "evidence, instrumentalities or fruits of the crime of conspiracy to possess or distribute cocaine."

After the warrants were issued, Agent Keene returned to Bonham, Texas, and briefed the DEA raid team that was to execute the warrants. The agents discussed the facts leading to the acquisition of the search warrants, as well as the fact that Shugart had a previous weapons conviction. The agents determined that they would raid Leach's mobile home and an unattached, open-faced garage adjacent to the mobile home simultaneously because agents had observed a person in the garage and were concerned that he or she might pose a safety risk to the agents.

The agents who raided the garage found Shugart standing near the center of the structure in close proximity to a work bench, which contained glass laboratory equipment, bottles of various substances, and several electric hand mixers, one of which was

5

gyrating intermittently as if there was a short in its power source. DEA agent Martin Suell, the first agent to enter the garage, identified himself and commanded Shugart to lie on the floor. After Shugart complied with this order, he was handcuffed by another agent. The agents frisked Shugart and found numerous "plastic baggies" in his coat pocket, which were ultimately seized. The agent then read Shugart his *Miranda* rights. Chemists were called to Leach's property, and they and the DEA agents processed the scene. Agents subsequently seized several containers containing liquid substances, measuring cups, funnels, an empty ephedrine bottle, and various other substances and laboratory equipment from the garage.

At some point during these events, DEA agents transported Shugart to his nearby mobile home and executed the second search warrant issued by the magistrate. Assorted chemistry magazines, literature on clandestine labs, and a letter were found and seized from Shugart's property.

Although Shugart was readily available, DEA agents asked Shugart's wife if she would accompany them to the Randolph post office and sign for the the package of ephedrine sent from T&M to her husband. Shugart's wife agreed, and with her help, agents seized the package from the post office. Subsequently, Shugart's wife signed a consent-to-search form authorizing the agents to open the package. When the agents opened the package, they found 3,000

ephedrine tablets.[2]

A federal grand jury returned a three-count indictment against Shugart. Count one charged him with conspiracy to manufacture methcathinone in violation of 21 U.S.C. § 846. Count two charged Shugart with manufacturing methcathinone in violation of 21 U.S.C. § 841(a)(1). Finally, count three charged Shugart with possession of a listed chemical, ephedrine, with intent to manufacture methcathinone in violation of 21 U.S.C. § 841(d)(1).

A jury trial was conducted on May 16, 1995.[3] The jury found Shugart guilty of manufacturing methcathinone. In addition, the jury found Shugart guilty of the necessary included offense of attempting to manufacture methcathinone. Finally, the jury found Shugart guilty of possession of ephedrine with the intent to manufacture methcathinone.

Shugart's presentence report ("PSI") recommended a base offense level of 26 under the applicable Sentencing Guidelines. This recommendation was based on a probation officer's estimate of the amount of methcathinone that Shugart attempted to produce. To make this calculation, the probation officer estimated the amount

[2] The district court excluded this evidence from trial. The court concluded that the government failed to carry its burden of showing that the search of the package from T&M was justified by consent and that a warrantless search of the package was, therefore, in violation of the Fourth Amendment.

[3] The district court granted Leach's motion to suppress the evidence found during a search of her mobile home, as well as incriminating statements that she made during that search, based on violations of the federal "knock and announce" statute. *See* 18 U.S.C. § 3109. The government subsequently dismissed all charges against Leach and the conspiracy count against Shugart.

of methcathinone that could be produced from the amount of ephedrine that Shugart ordered, assuming a 50% yield.

The district court rejected the 50% yield rate suggested by the PSI and found that a yield rate of 27% was more reasonable. Thus, the district court found that the 39,000 ephedrine tablets ordered by Shugart would produce 263.25 grams of methcathinone. In light of this calculation and Shugart's criminal history category of VI, the district court identified a sentencing range of 120-150 months. The district court then sentenced Shugart to 120 months incarceration on both counts of conviction, to run concurrently, followed by three years of supervision.

On December 8, 1995, Shugart filed a motion for a new trial, arguing that the government failed to disclose exculpatory evidence. On April 11, 1996, the district court concluded that the subject evidence was not material and denied Shugart's motion for a new trial. Shugart timely filed his notice of appeal, and this appeal followed.

## II.  Search and Seizure

*A.  Probable Cause to Search*

Shugart argues that Agent Keene's affidavit in support of the search warrants failed to establish probable cause to believe that evidence of a crime would be found on Shugart's or Leach's property. Specifically, Shugart claims that the affidavit failed to establish probable cause because it relied on information provided by an untrustworthy confidential informant and because it contained material errors, namely references to "cocaine" rather

than "methcathinone." Therefore, Shugart contends that the evidence seized as a result of the searches should have been excluded from evidence and that the district court's denial of his suppression motion constituted reversible error.[4]

This court reviews conclusions of law regarding the sufficiency of a warrant *de novo*. *United States v. Richardson*, 943 F.2d 547, 549 (5th Cir. 1991). Our review involves a two-step process, whereby we must first determine whether the good-faith exception to the exclusionary rule applies. *See United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984); *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). Only if a novel legal question is presented or the good-faith exception does not apply must we then "ensure that the magistrate had a substantial basis for concluding that probable cause existed."[5] *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983) (internal quotations omitted); *see also United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 & n.10 (5th Cir. 1997).

---

[4] The government argued in the district court that Shugart lacked standing to challenge the legality of the search of his sister's garage. The district court concluded that resolution of the standing issue was unnecessary, given its ultimate conclusion that the search warrant was supported by probable cause. We similarly decline to reach the standing issue based on our conclusion that the good-faith exception to the exclusionary rule applies. *Cf. United States v. Blocker*, 104 F.3d 720, 725 n.3 (5th Cir. 1997).

[5] This case does not present a novel question of law. *See Satterwhite*, 980 F.2d at 320 (recognizing that "whether, on the particular facts of [a] case, the affidavit supporting the search warrant established probable cause to search" was not a novel question of law).

The good-faith exception to the exclusionary rule provides "that evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988) (citing *Leon*, 468 U.S. at 922-23). "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *Id.* Nonetheless, the officers' good faith cannot be established, for example, when a warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.

Agent Keene's affidavit provided sufficient "indicia of probable cause" for reasonable law enforcement officers to believe that the procured warrants were valid. The affidavit related information from the CI that strongly suggested that Shugart was involved with methcathinone production. For example, the informant was aware that Shugart and Leach had ordered large amounts of ephedrine, an essential ingredient used to manufacture methcathinone. In addition, the CI had observed a "methcathinone laboratory" on Shugart's property in the recent past. The CI had also witnessed Shugart manufacturing methcathinone on two prior occasions. Finally, the CI had observed methcathinone and other chemicals used to manufacture the drug on Leach's property.

The government, however, did not rely exclusively on the CI's uncorroborated allegations when it sought the warrants to search Shugart's and Leach's properties. Instead, DEA agents verified much of the information provided by the CI through their independent investigation of Shugart's activities. For example, the agents determined that Shugart and Leach had ordered ephedrine from the same companies referenced by the CI. Moreover, on the day of the search, the agents observed several key ingredients used in the production of methcathinone, including ephedrine, being brought to Leach's mobile home.

Thus, the CI's reliability in this case was strengthened by the DEA's independent investigation, which corroborated important aspects of the information provided by the informant. *See United States v. Broussard*, 987 F.2d 215, 221-22 (5th Cir. 1993), *overruled on other grounds sub nom.*, *J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127, 114 S. Ct. 1419, 128 L.Ed.2d 89 (1994) (holding that information supplied by a confidential informant, which was corroborated by other evidence, supported a magistrate's finding of probable cause, despite a lack of evidence regarding the informant's reliability or veracity). Moreover, the reliability of the CI's information was enhanced by the fact that his statements were inculpatory and could potentially subject him to criminal sanctions. *See United States v. McKeever*, 5 F.3d 863, 865 (5th Cir. 1993) ("The fact that the CI's statements were against his own penal interest amounts to substantial corroboration"). Under these circumstances, we believe that a reasonable officer could easily

11

have concluded that Agent Keene's affidavit contained probable cause sufficient to justify issuance of the subject warrants.

The technical errors in the applications for the search warrants do not undermine this conclusion. Agent Keene pointed out the errors to the magistrate and corrected the majority of them pursuant to the magistrate's instructions. It is undisputed that any errors that remained were the result of an oversight by both Agent Keene and the magistrate. Under these circumstances, we believe that the good-faith exception applies, and the district court did not err in denying Shugart's motion to suppress.

*B. Sufficient Particularity*

Shugart argues that the challenged search warrants failed to authorize the seizure of evidence of drug manufacturing. Instead, the search warrants contained boilerplate provisions obviously intended for use in cases involving possession with the intent to distribute narcotics. Nonetheless, the agents searched for and seized evidence related to methcathinone production. Thus, Shugart argues that the warrants did not describe with sufficient particularity the things to be seized and that evidence of drug manufacturing obtained during the searches should have been excluded from trial. Shugart contends that the district court's failure to exclude such evidence constituted reversible error.

The Fourth Amendment requires a search warrant to describe with sufficient particularity the items to be seized. *See* U.S. CONST. amend. IV (stating that a warrant must "particularly describ[e] the place to be searched and the persons or things to be

12

seized"). The applicable test requires this court to ask whether "the description in the warrant would permit an executing officer to reasonably know what items are to be seized." *United States v. Beaumont*, 972 F.2d 553, 560 (5th Cir. 1992), *cert. denied*, 508 U.S. 926, 113 S. Ct. 2384, 124 L.Ed.2d 288 (1993). In addition, this court has held that the particularity requirement may be satisfied "by reliance on an affidavit when the affidavit is incorporated by reference into the warrant." *Id.* at 561; *but cf. United States v. Haydel*, 649 F.2d 1152, 1157 (5th Cir. Unit A 1981), *cert. denied*, 455 U.S. 1022, 102 S. Ct. 1721, 72 L.Ed.2d 140 (1982) ("An insufficient warrant cannot be cured by the most detailed affidavit").

Although Agent Keene's affidavit made clear that the DEA was seeking a warrant to search for evidence of methcathinone production, the search warrants did not mention drug manufacturing or incorporate Agent Keene's affidavit. Instead, the warrants authorized the government to seize the property "described on the attached Exhibit 'B.'"[6] The only terms in that exhibit, however, that could arguably have encompassed evidence of drug manufacturing

---

[6] Exhibit B provided the following list of items to be seized:

> N-Methcathinone, currency, scales, travel records, receipts, copies of cashier checks, copies of money orders, checking account records, notes, correspondence, customer lists, ledgers, bank safety deposit box records, address/telephone lists or books, photographs, jewelry, titles, deeds, stock certificates, guns, telephone pagers, radio scanners, computers and accessories, and other items evidencing the importation, purchase, and/or distribution of methcathinone and the obtaining, secreting, transfer, and/or concealment of assets and/or money, which are fruits, evidence, and instrumentalities related to violation of Title 21, United States Code, Sections 841(a)(1), 846, and 848.

13

were also so broad as to constitute the type of general warrant that has "long been abhorred in the jurisprudence of both England and the United States." *Beaumont*, 972 F.2d at 560. Thus, the warrants in the instant case were insufficient to satisfy the particularity requirement of the Fourth Amendment. Unless the good-faith exception to the exclusionary rule applies, the district court erred by denying Shugart's motion to suppress.

On the same day that the Supreme Court decided *Leon*, it also issued its opinion in *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S. Ct. 3424, 82 L.Ed.2d 737 (1984). In *Sheppard*, the defendant argued that a warrant authorizing a search for "controlled substances" violated the Fourth Amendment's particularity requirement. *Id.* at 987. The challenged warrant was accompanied by a detailed affidavit, which indicated that the search was for items related to a homicide investigation. *Id.* at 985. It was undisputed that the issuing magistrate and the executing officers knew the contents of the affidavit and the focus of the search. Relying on *Leon*, the Court noted that the only issue before it was "whether the officers reasonably believed that the search they conducted was authorized by a valid warrant." *Id.* at 988. Because the officers' subjective belief in the validity of the warrant was uncontested, the Court explained that the only remaining issue was "whether there was an objectively reasonable basis for the officers' mistaken belief." *Id.* The Court concluded that the officers' good-faith reliance on the warrant was objectively reasonable because the affidavit had been approved by the U.S.

14

Attorney, the issuing magistrate had made a probable-cause determination, and the warrant would have been valid on its face with only minor corrections.[7] *Id.* at 989.

In *United States v. Beaumont*, 972 F.2d at 562, this court applied the good-faith exception to uphold the admissibility of evidence seized during a search, despite the fact that the warrant authorizing the search failed the particularity requirement. The court relied on *Sheppard* and concluded that the officers' good-faith reliance on the warrant was objectively reasonable because "there was a probable cause determination made by [a] judge, the affidavit provided specific information of the objects of the search, the executing officer was the affiant, the additional officers making the search knew what was to be searched for, and, finally, the warrant could easily have been made valid by the insertion of the phrase 'see attached affidavit.'" *Id.* Because the instant case is indistinguishable from *Beaumont*, the good-faith exception applies, and the district court did not err in denying Shugart's motion to suppress.

*C. Probable Cause to Arrest*

Shugart argues that the district court erred by admitting "plastic baggies" and a receipt from an ephedrine manufacturer into evidence. This evidence was found in Shugart's pockets when DEA agents conducted a search of his person shortly after entering

---

[7]   In this regard, the Court observed that "if the judge had crossed out the reference to controlled substances, written 'see attached affidavit' on the form, and attached the affidavit to the warrant, the warrant would have been valid." *Id.* at 985 n.7 (internal citations omitted).

15

Leach's garage pursuant to a search warrant. Shugart contends that the search of his person violated his fourth amendment rights because it was conducted before the agents had probable cause to arrest him. In contrast, the government argues that Shugart's arrest was supported by probable cause and that the subsequent search of his external clothing was justified as a search incident to a lawful arrest.

The Fourth Amendment requires that a warrantless arrest be based upon probable cause. *United States v. Levine*, 80 F.3d 129, 132 (5th Cir.), *cert. denied*, — U.S. —, 117 S. Ct. 83, 136 L.Ed.2d 40 (1996). Thus, in determining whether to suppress the subject evidence, the pertinent inquiry is whether the agents had probable cause to arrest Shugart. "Probable cause exists when the totality of the facts and circumstances within a [law enforcement] officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.*

At the time the DEA agents entered Leach's garage, they were aware that Shugart had retrieved a package containing ephedrine, an essential ingredient in methcathinone production, and brought it to the mobile home. They also knew that other chemicals used to produce methcathinone had been brought to the mobile home. Moreover, the agents had been informed by the CI that Shugart was in possession of a methcathinone laboratory, had manufactured methcathinone in the past, and was ordering ephedrine to use in the manufacturing process. Notably, when the agents entered the

16

garage, they observed Shugart in close proximity to an array of laboratory equipment and several vessels containing liquid substances. A hand mixer appeared to have been recently used, as it was gyrating intermittently.

Based on these facts, the agents had probable cause to believe that Shugart had been or was in the process of manufacturing methcathinone when they found and arrested him in the garage. The subsequent search of Shugart's clothing was justified, in turn, as a search incident to his lawful arrest. *See, e.g.*, *United States v. McFarland*, 633 F.2d 427, 429 (5th Cir. 1980) ("The purpose of the doctrine permitting searches incident to arrest is to allow discovery and preservation of destructible evidence ....") (citing *Chimel v. California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969)). The district court, therefore, did not err in denying Shugart's motion to suppress the evidence found in his pockets during his arrest.

## III. Evidentiary Issues

*A. Photographs*

Shugart argues that photographs of laboratory equipment and chemicals found in the search of Leach's garage were improperly admitted into evidence. Shugart claims that the agents rearranged the evidence before the photographs were taken and thereby conveyed a false impression of the crime to the jury. In response, the government argues that movement of the items depicted in the photographs went to the photographs' weight, not to their admissibility.

17

Decisions regarding the admissibility of evidence are reviewed for an abuse of discretion. *See, e.g.*, *United States v. Carillo*, 20 F.3d 617, 620 (5th Cir.), *cert. denied*, 513 U.S. 901, 115 S. Ct. 261, 130 L.Ed.2d 181 (1994). Even if an abuse of discretion occurred, this court must determine "whether the error was harmless or whether the error requires reversal because, when viewed in the light of the entire record, it affected the substantial rights of the defendants." *United States v. Humphrey*, 104 F.3d 65, 70 (5th Cir.), *cert. denied*, — S. Ct. —, 1997 WL 195218 (May 19, 1997).

The district court did not abuse its discretion by admitting the challenged photographs into evidence. The photographs were offered for the purpose of showing the jury the laboratory equipment and chemicals found at the scene of the crime, not to demonstrate precisely what the crime scene looked like. In this regard, the government agents who testified at trial freely disclosed that they moved the evidence prior to photographing it and that the photographs did not accurately depict the scene of the crime.

*B. Business Records*

Shugart argues that the district court erred in admitting the business records of two ephedrine distributors into evidence. These records consisted of order forms filled out by employees of the distributors. The order forms indicated that calls were made from numbers assigned to Shugart's parents and sister to the ephedrine distributors and that, as a result, the distributors shipped orders of ephedrine to Leach's address and Shugart's post

18

office box.  Shugart argues that the business records were inadmissible double hearsay.

At trial, the parties stipulated that the order forms constituted business records of T&M and Olympus.  This stipulation also provided that the names given by callers to the businesses would be redacted from the records.  Although Shugart contends that any information provided by the callers constituted inadmissible double hearsay,[8] we believe that such information was not hearsay at all.  The challenged business records were not offered to prove that factual matters asserted by the callers were true.  Instead, the business records were offered to prove that the callers provided certain information to the distributors and that orders were shipped to certain addresses as a result.  Because the information provided by the callers was not hearsay, the district court did not abuse its discretion by admitting the subject business records into evidence.

## IV.  Motion for a New Trial

After his conviction, Shugart moved for a new trial, arguing that the government failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963).  Shugart claimed that the government failed to disclose the affidavit of Troy Derby, a special agent for the DEA. Agent Derby's affidavit contained statements made by William Killion, the confidential informant in this case, after he was

---

[8]  Specifically, Shugart contends that information provided by the caller regarding his or her name, address, phone number, and desired product was inadmissible hearsay.

19

arrested in Kansas for manufacturing methcathinone. In his statements, Killion admitted that he was engaged in methcathinone production with a woman named Carolyn Braddy, who allegedly ordered the necessary chemicals and provided her residence as a place to manufacture the drug.

Shugart argued that Killion's statements were consistent with his defense at trial, which attempted to prove that Killion was solely responsible for ordering ephedrine and manufacturing methcathinone.[9] Shugart claimed that just as Killion falsely accused him of manufacturing methcathinone, Agent Derby's affidavit established that Killion used the same *modus operandi* in making false accusations against Braddy. The district court denied Shugart's motion for a new trial, concluding that Agent Derby's affidavit was not "material."

Motions for new trial based on newly discovered evidence are generally disfavored. *See United States v. Nixon*, 881 F.2d 1305, 1311 (5th Cir. 1989); FED. R. CRIM. P. 33. District courts have "considerable discretion" in deciding Rule 33 motions. *United States v. MMR Corp.*, 954 F.2d 1040, 1047 (5th Cir. 1992). We review the district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Freeman*, 77 F.3d 812, 815 (5th Cir. 1996).

Shugart was not entitled to a new trial unless a reasonable probability existed that the government's disclosure of Agent

---

[9] In contrast, the government claimed that Killion taught Shugart how to manufacture methcathinone and got him started in the business.

20

Derby's affidavit would have resulted in acquittal. *See United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L.Ed.2d 481 (1985); *MMR Corp.*, 954 F.2d at 1046. At trial, Shugart argued that he was innocent and that Killion had used Shugart's name to order ephedrine and had manufactured methcathinone on his property. Shugart contends that the newly discovered evidence supports his theory because it shows that Killion also used Braddy's name and residence to order and manufacture methcathinone. This interpretation of the affidavit, however, relies on an unsupported assumption that Braddy was also innocent and that Killion was lying about her involvement to protect himself.

Even assuming Agent Derby's affidavit is consistent with Shugart's claim of innocence, we do not believe that presenting such evidence to the jury would have increased the probability of a different verdict. First, the government put on ample evidence of Shugart's direct involvement in methcathinone production. In fact, there was evidence that suggested that Shugart was in the process of manufacturing methcathinone when he was arrested. Shugart's theory that Killion alone was responsible for manufacturing methcathinone was also contradicted by orders for ephedrine placed well after Killion had left Texas. Moreover, the newly discovered evidence does not provide a new theory of the case. Rather, the evidence, at most, bolsters a theory advanced at trial. The jury rejected Shugart's version of the events, and we believe that it is unlikely that his "new" evidence would disturb that conclusion. Because the evidence at issue does not undermine

21

the jury's verdict, the district court did not abuse its discretion by denying Shugart's motion for a new trial.

## V. Sentencing Calculation

Shugart argues that the district court erred in calculating his sentence under the applicable Sentencing Guidelines. It is well settled that in reviewing an appeal from a guideline-based sentence, this court "will uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous." *See*, *e.g.*, *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir. 1989). Specific factual findings regarding the quantity of drugs to be used in determining the base offense level are reviewed on appeal only for clear error. *United States v. Angulo*, 927 F.2d 202, 204–05 (5th Cir. 1991). In making findings of fact pursuant to the Sentencing Guidelines, a district court need only be convinced by a preponderance of the evidence. *United States v. Castro*, 889 F.2d 562, 570 (5th Cir. 1989), *cert. denied*, 493 U.S. 1092, 110 S. Ct. 1164, 107 L.Ed.2d 1067 (1990).

The district court found that 39,000 tablets of ephedrine were ordered and intended for use by Shugart in the production of methcathinone, and sentenced him accordingly. This court has previously held that "[t]he exclusionary rule applicable to Fourth Amendment violations is generally inapplicable to the district court's consideration of evidence for purposes of sentencing." *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1181 (5th Cir. 1993) (quoting *United States v. Robins*, 978 F.2d 881, 891-92 (5th Cir.

22

1992)).  In addition, we hold today that placement of the subject ephedrine orders was properly considered relevant conduct in this case because Shugart intended to possess the ephedrine for the purpose of manufacturing methcathinone and the orders were placed in preparation for the offenses of which he was convicted.  *See* U.S.S.G. § 1B1.3(a)(1).   Based on these principles and our independent examination of the record, we hold that the district court did not clearly err by attributing 39,000 tablets of ephedrine to Shugart.

For all of the foregoing reasons, Shugart's convictions and sentences are AFFIRMED.